**BRANN v. ARBUTHNOT et al.   (No. 11181.)**

(Court of Civil Appeals of Texas.   Ft. Worth.   May 30, 1925.   Rehearing Denied June 27, 1925.)

1. **Pleading ⬳290(3)—Answer to cross-action on note must be verified, where it is in effect plea of want of consideration.**

In suit by real estate broker for commission against seller and another broker, who had been given note for commission for sale in question, wherein latter brought cross-action on note to which owner filed answer, unverified by affidavit, that his signature to contract of sale was procured by false representation and that cross-plaintiff was not procuring cause of sale, judgment denying recovery on cross-plea will be reversed on theory that answer to cross-plea, being in effect plea of want of consideration, was required by Rev. St. art. 1906, § 10, to be verified by affidavit, where error was specifically raised and urged below.

2. **Appeal and error ⬳1177(4)—Cause reversed and remanded, rather than reversed and rendered for error in overruling objection that answer unverified by affidavit.**

Where cross-plaintiff objected that answer to his cross-action on note was in effect plea of want of consideration and that therefore, under Rev. St. art. 1906, § 10, it should be verified by affidavit, which objection was erroneously refused, appellate court will reverse and remand cause, rather than reverse and render judgment, inasmuch as cross-defendant had right to rely on court's ruling and to amend had objection been sustained.

3. **Brokers ⬳85(4)—In controversy between brokers over commission, evidence held admissible to prove one was moving cause of sale.**

In suit by real estate broker against seller and broker to whom seller had given note for commission, testimony of buyer, that she would have purchased from defendant broker regardless of plaintiff, and that latter did not influence her in any way, was admissible to prove defendant broker was moving cause of sale.

4. **Brokers ⬳81—Other claimant proper party defendant to suit by broker against seller for fee.**

In suit by broker for fee against seller and another broker to whom seller had given note for commission, to avoid multiplicity of suits, defendant broker was proper party.

5. **Estoppel ⬳110—Defense of waiver or estoppel must be pleaded to be available.**

Where, to action on note given for commission for selling property, seller pleaded that he signed contract of sale relying on misrepresentation made by broker, defense that seller waived fraud by executing note after discovery of facts, is not available, where broker did not plead waiver or estoppel.

Appeal from Tarrant County Court; H O. Gossett, Judge.

Suit by Charles A. Arbuthnot against E. J. Brann and J. P. Elliott, in which defendant Brann brought a cross-action against defendant Elliott.   Judgment for plaintiff and against defendant Brann in his cross-action, and he appeals.   Reversed and remanded in part, and affirmed in part.

Hyder & Batten, of Ft. Worth, for appellant.

Marvin H. Brown, of Ft. Worth, for appellees.

BUCK, J.   Charles A. Arbuthnot filed suit against J. P. Elliott and E. J. Brann. He alleged that he was a real estate broker, and had been employed to sell a house and lot belonging to Elliott, and that he procured a purchaser, in the person of B. P'Pool, who was ready, willing, and able to purchase the property upon terms satisfactory to the owner, and in fact said Elliott sold the property to the P'Pools at the price asked, to wit, $4,750.   He further alleged that E. J. Brann had secured the signature to the contract of sale by falsely and fraudulently representing to Elliott that one R. M. Bowen, who was the agent of Elliott for the care and sale of the property, had sent him to Elliott to secure such signature.   That by reason of the fraudulent conduct of said Brann, he had induced said Elliott to execute and deliver to him a promissory note for the commission.   He prayed that he have judgment against Elliott for $237.50, 5 per cent. on the selling price, alleged in one count to be the commission agreed upon, and, in another count, to be the usual and customary charge for such services.   Elliott filed an answer, signed by him, but apparently prepared by some lawyer, and he testified:

"I never in my life promised to pay counsel a fee in any transaction.   I have not asked counsel to represent me in this case, and have not promised to pay counsel anything.   The last I knew, Mr. Bowen was representing me."

Mr. Bowen is shown to be connected with one of the local banks, but evidently not a lawyer.   Hence, perhaps we are justified in assuming that counsel referred to in the testimony of Elliott was the counsel of plaintiff below.

In defendant Elliott's answer he alleged:

"Now comes J. P. Elliott defendant and respectfully shows the court that he stands ready to pay the commission sued for to whomsoever it belongs.   That he had at the time of the transaction in question one R. M. Bowen acting as his agent in looking after his matters; that the defendant Brann came out to see

your defendant, and told your defendant that your defendant's agent, R. M. Bowen, said for your defendant to sign the contract of sale that was made with the purchaser and that your defendant, relying upon such statements and representations made by Brann signed the sale contract, and afterwards executed and gave defendant Brann a note for the commission in question, believing at the time the statements and representations made by Brann were true. Your defendant says that if such statements and representations were true, and if Brann was the procuring cause, he owes the commission to Brann, but that if same were false and untrue then he does not owe the commission to Brann. That your defendant had [has?] been advised by his agent Bowen, that he, Bowen, gave no instructions to Brann, such as Brann made to your defendant, and your defendant is a mere stakeholder and stands ready to pay the commission to whomsoever the court may find is lawfully entitled thereto, and defendant prays that he be dismissed with his costs, etc."

Defendant Brann answered by general demurrer, by a plea of misjoinder, by a general denial, and by a plea that he was the procuring cause of the sale. By a cross-action, Brann sought to recover on the note given by Elliott, dated April 25, 1923, for the commission. He alleged that the payment of said commission note was contingent upon the payment of a certain note given by the P'Pools in the payment for the place, and that the last-named note had been paid.

Elliott answered this cross-action by a plea that Brann had secured his signature to the contract of sale by falsely and fraudulently representing to him that he, Brann, had been sent to Elliott to secure such signature by Elliott's agent Bowen, and that he would not have signed the contract had he not relied on such representation. This pleading was signed "J. E. Elliott, by R. N. Bowen, Agent," probably meaning R. M. Bowen. He further alleged that he had signed said note believing that Brann was the procuring cause of the sale, when in truth and in fact he was not the procuring cause. That answer was not verified.

The cause was submitted to a jury on special issues, and the jury found: (1) That Brann told Elliott, prior to his signing the contract of sale, that R. M. Bowen had sent him to Elliott to secure his signature to such contract; (2) that such representation was untrue, and that Elliott would not have signed the contract, had he not relied thereon; (3) that Arbuthnot was the procuring cause of the sale.

Upon this verdict, the court entered judgment for Arbuthnot against Elliott for $237.-50, with interest from date of judgment, and against Brann and in favor of Elliott on Brann's cross-action for recovery on the commission note. Costs of court were taxed equally against Brann and Elliott. Brann appealed.

The evidence in the case shows that Elliott listed his property with both Arbuthnot and Brann. That on March 1, 1923, Arbuthnot showed the property to Mrs. P'Pool, and later to her and her husband, and that they offered to pay $4,500 for it, but, that, upon Arbuthnot's referring the offer to Elliott, the latter said he would not take less than $4,-750. On or before April 9, thereafter, Brann showed the property to Mrs. P'Pool, and she finally agreed to pay $4,750 for the property. Mrs. P'Pool testified.

"My name is Mrs. B. P'Pool. I am the wife of the gentleman who signed this contract I see there. We closed the trade according to the terms of the contract. The first man who showed us that property was Charles Arbuthnot. The house was not completed then but it was very nearly completed. That was about three or four weeks before I looked at it with Mr. Brann. I went out with Mr. Arbuthnot and there were several houses. We said we would like to get a house at $4,500, and he said he couldn't take it. The price he made us was $4,750. Mr. Arbuthnot never came back any more about the house. Now I wanted a house, and I had notes that came due in July, on the 5th, and we waited some two or three or four weeks or maybe a month. Two or three days later I saw Mr. Brann's advertisement of several places. The next afternoon was Sunday, and he took Mr. P'Pool and I out and we looked around, and I told him I had been out three or four times, and when I bought the house from Mr. Brann I told him the man's name was Arbuthnot; and when I got home I called Mr. Arbuthnot, and called his office, and he never called about the house during that week. He said he didn't get the telephone call, I don't know. I bought the house from Mr. Brann because I couldn't trade with Mr. Arbuthnot. I went out to look Mr. Arbuthnot up and I did not get to see him until the next day."

On cross-examination she testified:

"I told Mr. Arbuthnot that I subsequently did trade. Mr. Brann really did close the deal with me. That is the man right there."

[1] Appellant urges that the court erred in not giving the jury a peremptory instruction, and rendering judgment for him on the note sued on. That Elliott's defense was in effect a plea of want of consideration, and that under article 1906, § 10, Rev. Statutes, said answer was required to be verified. This article and section reads as follows:

"An answer setting up any of the following matters, unless the truth of the pleadings appear of record, shall be verified by affidavit; * * * 10. That a written instrument upon which a pleading is founded is without consideration, or that the consideration of the same has failed in whole or in part."

We think this contention is good, and that inasmuch as the answer to the cross-action was on file, and appellant called attention to the lack of verification, and pleaded that in absence thereof defendant Elliott's plea con-

stituted no defense to the cross-action, and the trial court apparently overruled said objection and plea, and appellant raised and specifically urged said alleged error on the part of the court, that the judgment must be reversed in so far as appellant's cause of action against Elliott is concerned. As to the cross-action, Brann was a plaintiff and Elliott a defendant, and the failure of Elliott to verify his answer in the face of an exception to the unverified answer made his answer a nullity, in so far as the plea of want of consideration was concerned.

[2] We have considered whether for this error we ought to reverse and remand the cause, or reverse and render the judgment for appellant, but inasmuch as Elliott had the right to rely on the correctness of the ruling of the court, and, had the exception been sustained, to amend his pleadings, we have concluded that we ought to simply reverse and remand. This seems to be the practice of the Supreme Court. Drew v. Harrison Brothers, 12 Tex. 279.

[3, 4] We are further of the opinion that the testimony of Mrs. P'Pool to the effect that she would have bought the property from appellant regardless of Arbuthnot, and that the latter did not influence her in any manner in the purchase was admissible, as tending to prove that Brann was the moving cause of the sale, and that the trial court erred in excluding this testimony. We do not think that appellant was improperly joined as a defendant in the suit. He was claiming a right to the broker's fee, and so was plaintiff below. To avoid a multiplicity of suits, he was a proper party. Other questions contained in appellant's brief will probably not arise on a new trial.

[5] The evidence shows that Elliott, prior to the execution and delivery of the note, learned from Bowen that he had not sent Brann to Elliott to get his signature to the contract of sale. This contract was signed by Elliott, according to his testimony, on April 9, 1923. According to the testimony of R. M. Bowen, Mr. Elliott came to him the next day, and said that the sale was a good one. Then Bowen told him he had not sent Brann out to see him (Elliott). On April 25, 1923, the note was given to Brann for the commission. At any time Elliott knew all about any fraudulent representation claimed to have been made to him by Brann. It would appear that he waived the issue of fraud. But Brann did not plead waiver or estoppel, and such defense must be pleaded to be available. Bowman Lumber Co. v. Pierson, 110 Tex. 543, 221 S. W. 930, 11 A. L. R. 547; Moody & Co. v. Rowland, 100 Tex. 363, 99 S. W. 1112.

Therefore, the judgment, in so far as it renders a recovery against appellant for one-half of the court costs, and denies a recovery against Elliott on the note, is reversed, and the cause remanded. In so far as the judgment of plaintiff against Elliott is concerned, from which no appeal has been prosecuted, the judgment is left undisturbed.

Reversed and remanded in part, and left undisturbed in part.