WHITEHEAD et al. v. REIGER.　(No. 2539.)*

(Court of Civil Appeals of Texas. Amarillo. Feb. 10, 1926. Rehearing Denied March 17, 1926.)

1. **Fraud ⬤�ネ41.**

Petition, charging fraud and conspiracy in cheating plaintiff out of his property in connection with exchanges of property, *held* good as against general demurrer.

2. **Fraud ⬤⟭47 — Description of lumber and building material held sufficient as against special exceptions.**

In action for fraud and conspiracy in cheating plaintiff out of property, including lumber and building material, description of lumber and material in petition *held* sufficient as against special exceptions.

3. **Limitation of actions ⬤⟭100(3)—In action for fraud in obtaining property, limitations run only from discovery of fraud.**

In action for damages from fraud and conspiracy to cheat plaintiff out of property, two-year statute of limitation *held* to run from time of discovery of fraud and not from time transactions claimed to be fraudulent occurred.

4. **Evidence ⬤⟭434(11).**

In action for damages for fraud in inducing contract for exchange of properties, parol evidence of transactions relating to fraud *held* admissible.

5. **Trial ⬤⟭251(2).**

Instruction on specific issue of estoppel is not authorized, where estoppel is not pleaded.

6. **Fraud ⬤⟭61.**

Where defendant is shown to have defrauded plaintiff of his property with deliberate intent, and to have caused actual damage, exemplary damages are allowable.

Appeal from District Court, Lubbock County; Parke M. Dalton, Special Judge.

Suit by Henry J. Reiger against A. E. Whitehead and others. Judgment for plaintiff, and defendants appeal. Affirmed.

Bledsoe, Woodward & Higgins and Homer L. Pharr, all of Lubbock, and Chas. L. Black, of Austin, for appellants.

Pearce, Stewart & Triplett, Robt. H. Bean, and Bean & Klett, all of Lubbock, for appellee.

RANDOLPH, J. Appellee, Reiger, filed this suit in the district court of Lubbock county on February 12, 1924, against the appellants A. E. Grady, and Bob Whitehead, charging them with fraud and conspiracy in cheating the plaintiff out of his home and other property. The trial court rendered judgment for the sum of $17,209 in favor of the plaintiff, and the defendants have appealed.

Plaintiff in his second amended original petition alleged in part, substantially:

That heretofore, to wit, on or about January 31, 1921, plaintiff was the owner of a certain 230 acres of land in Lubbock county, upon which he was living and claiming as his homestead. That the plaintiff purchased said land from one Edwards at the price of $42.50 per acre, aggregating the sum of $13,-600. That he has paid $4,000 upon the principal, and has given his eight notes in the sum of $1,200, each for the remainder of the consideration. That the plaintiff has also purchased approximately $2,500 worth of lumber and building material of the value of $2,500, and placed same upon said land preparatory to making valuable and permanent improvements thereon. That on the date aforesaid said land had been put in a good state of cultivation and was of the reasonable market value of $60 per acre, exclusive of the value of said lumber and building material. That upon said date the value of plaintiff's equity in said land, including the value of said lumber and building material, was $12,-100.

That on and prior to said date, and during the period herein mentioned, the defendants aforesaid formed and entered into a conspiracy to cheat, swindle, and defraud the plaintiff out of his home aforesaid. That the defendants persuaded and induced the plaintiff to convey said land and lumber to the defendant A. E. Whitehead upon the false and fraudulent promise and representation that they would transfer and convey to the plaintiff a half interest in the lots, building, business, equipment, and merchandise stock of the Slaton Grain & Coal Company, of Slaton, Tex., which defendants represented was a good paying business, worth the money, and of the market value of $6,500, and in payment of the balance of plaintiff's equity in said land the defendants falsely and fraudulently promised and represented to the plaintiff that the plaintiff would have and receive all excess in the proceeds of the sale of said land, should the same sell for more than $42.-50 per acre on or before January 1, 1922. That the defendants gave the plaintiff no deed or transfer to any part of said lots, building, business, equipment, or merchandise stock of the Slaton Grain & Coal Company, but continuously represented and promised the plaintiff that they would do so.

That, in the course of a week or so after the execution and delivery of the aforesaid deed, but as a continuance of the same transaction, and as a part of the defendants' scheme to cheat, swindle, and defraud the plaintiff as aforesaid, the defendants persuaded and induced the plaintiff to relinquish all his interest in and to the merchandise stock of the Slaton Grain & Coal Company, in consideration of the transfer to the plaintiff of a note of $3,500, secured by lien on land in New Mexico, which note was signed by one J. F. Sumner, and payable to the order of defendant A. E. Whitehead. That the defendants falsely and fraudulently represented unto the plaintiff that said land was worth $60 per acre, and that said note was worth its face value, and was as good as gold, whereupon the plaintiff consented to make the trade and relinquish his interest in the merchandise stock aforesaid, when in truth and in fact said New Mexico land was not worth more than $4 or $5 per acre, and the deed from A. E. Whitehead to the said J. F. Sumner showed a lien still unsatisfied securing a total indebtedness of $9,600. That in the trade for said $3,500 note same was represented by the defendants to be the property of another, who was a total stranger to the plaintiff, but whom the plaintiff has since learned to be one Sullivan, of Tahoka, Tex. That, while defendants represented that the said Sullivan was the owner of the said note and desired to trade same for said merchandise stock aforesaid, the truth is that the defendants were using the said Sullivan as a blind and stool pigeon, for the purpose of misleading the plaintiff; said deal having been made and consummated in fact for the use and benefit of the defendants, without the plaintiff's knowledge or consent, whereby the defendants wrongfully and fraudulently obtained from the plaintiff a relinquishment and surrender of his interest in the merchandise stock aforesaid. That the defendants also represented that said note was formerly owned by the defendant A. E. Whitehead, and was indorsed by him, and that the defendant A. E. Whitehead would guarantee the payment thereof, when in truth and in fact the said Sullivan was not the owner of the note, and it belonged to A. E. Whitehead or one of the other defendants, but had not been indorsed or guaranteed by them, and said note only bears the indorsement of the defendant A. E. Whitehead "without recourse" on him, although the plaintiff did not know of this fact, being illiterate and being

scarcely able to read or write, never having gone to school more than five or six months in his life, and not at all acquainted with business transactions or legal affairs, and not knowing whether defendant A. E. Whitehead was responsible upon said indorsement or not, the defendants well knowing of the facts and conditions herein set forth. That said note is not and has never been indorsed by any of the defendants, and is and has always been practically worthless, and so known to the defendants at all times.

That, in the course of only a few days after the transactions aforesaid, but as a continuation of the defendants' conspiracy to cheat, swindle, and defraud the plaintiff as aforesaid, the defendants persuaded and induced the plaintiff to part with and relinquish the remainder of his interest in the lots, buildings, equipment, and business of the Slaton Grain & Coal Company, which was situated in the town of Slaton, Tex., upon the defendants' false and fraudulent promise and representations that they would secure for him a conveyance to him from the said J. F. Sumner as owner of the New Mexico land, for and in consideration of the surrender and relinquishment by the plaintiff of his interest in the lots, buildings, business, and equipment of the Slaton Grain & Coal Company. That the defendants represented to the plaintiff that the New Mexico land was worth $60 to $65 per acre, and that they would enter into a written contract guaranteeing the plaintiff that they would sell said land at such price within 30 days. That the defendants produced the said J. F. Sumner, who made conveyance of the said New Mexico land to the plaintiff on the warranty and representations that said land was free and clear from all liens except the indebtedness of $9,600 mentioned therein. That, in addition to the representations aforesaid, the defendants also represented that said New Mexico lands were well improved and had a good house and barns upon it and also a good orchard and 70 acres in cultivation, when as a matter of fact said land was not worth more than $4 or $5 per acre, and the improvements were practically worthless, and there was no orchard on the same and no land in cultivation whatever. That, after the plaintiff's acceptance of said deed, and while the plaintiff was waiting for the defendants to furnish him the promised written guaranty that they would sell the land for $60 to $65 per acre within 30 days, the defendants sent J. F. Sumner on horseback about daylight the next morning out to see the plaintiff, for the purpose of falsely and fraudulently inducing and persuading him to release the defendants from their promise to furnish said written guaranty. That the defendants and said Sumner, who was acting for the defendants throughout the transaction herein set forth, represented to the plaintiff that three men from Portales, N. M., had come to his house

the night before and offered to buy the New Mexico land for $100 per acre, and advised him to release the defendants from their agreement to give the written guaranty. That the plaintiff thereupon informed the defendants of the said Sumner's representations, whereupon the defendants requested and urged the plaintiff to make the exchange with the said Sumner, the defendants representing to the plaintiff that Sumner's statements were true, and that the plaintiff could get $100 per acre for said land, as it was very valuable on account of a potash that had been discovered, and persuaded the plaintiff to waive the written guaranty offered of $60 or $65 per acre, when as a matter of fact the representations and promises of said defendants and of the said Sumner were false and no potash was discovered upon said land. That thereby the said plaintiff lost his home and received no compensation therefor whatever, and obtained nothing for his supposed interest in the lots, building, business, equipment, and merchandise stock of the Slaton Grain & Coal Company.

That the purported deed from the defendant A. E. Whitehead to the said J. F. Sumner and the purported notes from the said Sumner to the defendant A. E. Whitehead were in fact fraudulent and bogus, in that the said Sumner was trustee for the defendant A. E. Whitehead, and said notes were not bona fide obligations and liens, but were put in circulation for the fraudulent purpose of enabling the defendants to cheat and defraud the plaintiff. That the said Sumner has been wholly insolvent during the times herein mentioned, and without any property subject to execution sufficient to satisfy his debts, and was only a tool and dummy for the use of the defendants in the transactions herein set out.

That the plaintiff further believes and here alleges that the defendants Grady and Bob Whitehead were and are wholly insolvent and without sufficient property in this state subject to execution to pay their debts. That said defendants were mere tools and agents of the defendant A. E. Whitehead, for the purpose of cheating and defrauding the plaintiff out of his home and property.

That the defendants made the representations and promises herein alleged as a material inducement to the plaintiff to enter into the contract and negotiations herein alleged, and for the fraudulent purpose of cheating, swindling, and defrauding the plaintiff out of his home and property, and with the intention not to perform any of the promises or representations made. That in this respect the defendants acted maliciously and willfully, with the desire and design upon their part to cheat and defraud. That none of the promises or representations made by the defendants has been fulfilled or performed. That had it not been for said promises and representations, the plaintiff would not have en-

tered into any of the transactions. That he was wholly ignorant of his rights in the matter set up, and was deceived by the defendants' representations and promises to his injury in the sum of $15,000 actual damages.

That, on or about August 12, 1921, the defendant A. E. Whitehead sold and conveyed to C. A. Saage plaintiff's said 320 acres of land in Lubbock county, Tex., being his home place, for a consideration of $60 per acre, which the defendant received and appropriated to his own use and benefit without accounting to the plaintiff therefor. That the defendants failed and refused to account to the plaintiff for his interest in said land or for the value thereof. That the value of the consideration received by the defendants out of the sale of said land above the value of the said lumber and building material was $12,100. That the defendants have also appropriated and converted the plaintiff's lumber and building material deposited on said 320 acres of land, and that the value of said lumber and building material was $2,500 at the time. That the defendants obtained said lumber and building material from the plaintiff on the false and fraudulent promises and representations herein alleged, and in the manner set out in this petition. That plaintiff's said 320 acres of land is of the market value of $75 per acre and said lumber and building material is of the value of $2,500.

That on or about March 1, 1921, plaintiff was indebted to the defendant A. E. Whitehead in the sum of about $500 for secondhand furniture. That at the same time the plaintiff owned the following personal property of the market value set out opposite each item, to wit: 19 calves, $475; 25 cattle, $1,375; 2 horses, $275; 4 mules, $750; 4 hogs, $200; 18 shoats, $300; 2 planters, $125; 1 hand plow, $14; 3 go-devils, $85; 1 disc harrow, $60; 1 harrow, $22; 1 cultivator, $45; 1 sulky, $35; 6 bales cotton seed, $100; 1 anvil, $15; harness, $80; and 1 Ford car, $200—all of the total value of $4,157. That on the pretense of helping the plaintiff, etc., the defendants secured the plaintiff's said personal property and converted same to their own use and benefit, alleging false representations, etc.

Further plaintiff alleges reliance upon such representations, and that he would not have acted as he did in such transactions but for such promises and representations.

Plaintiff further alleges that:

"By way of more specific allegation of the description and value of the lumber mentioned above, plaintiff says same were two carloads of new lumber, just bought from the mills for the purpose of building a 6-room frame residence about 26 by 40 feet, consisting of best grade siding, No. 2 ship lap inside, 2x4 studding, 2x6 floor plates, 2x4 ceiling joists, 2x4 rafters, sheeting 1x7 for roofing, being dimensions, number, and quality of materials ordinarily used and required in this country for a farmhouse of the above size and description, also materials for a boxed barn, 36 by 40 feet, about 16 feet high, with 2x4 plates 1x12 boxing, floor sills 2x6; said materials having cost about $2,200, and of the market value of $2,200 on the farm, and especially of the intrinsic value aforesaid."

Plaintiff prays for actual damages in the sum of $18,600 and for $20,000 exemplary damages.

Defendants' second amended original answer, upon which the case was tried, contained a general and several special exceptions and general denial.

The case was submitted to the jury upon special issues, and on the answers of the jury the trial court rendered a judgment in favor of the plaintiff. From that judgment the defendants have appealed to this court.

[1, 2] Appellants, by their first proposition, complain of the trial court's action in overruling their general demurrer. We overrule the proposition. By their second and fourteenth propositions, appellants charge error on the part of the trial court in overruling their special exceptions 1 and 2 to plaintiff's amended petition, which special exceptions were to the effect that said petition failed to describe the lumber and building material, for the value of which he seeks to recover, with that degree of certainty required to place defendants upon notice as to what was included therein.

Referring to the plaintiff's petition, from which we have quoted above, it appears that that paragraph of said petition sufficiently describes such lumber and material.

The case cited by appellants to support their proposition (Wood & Lee v. Hollander, 19 S. W. 551, 84 Tex. 394, 397), in the view we take of the question, supports our holding. In that case the defendants excepted to the plaintiff's petition because it did not sufficiently describe the property. The description was:

"All of his (B. W. Gumport's) stock of wines, whiskies, cigars, etc., situated in his saloon on the southeast corner of the public square in Clarksville, Tex.; also all of his wines and whiskies situated in the Thompson warehouse in said town of Clarksville; together with his unexpired state and county liquor license."

The Supreme Court, upon this description, held that the exception should have been sustained, and say:

"The property was evidently capable of a particular specification, and the right of the defendants to be apprised by such a specification of the case that they had been cited to defend was of material value to them."

By a comparison of the allegations in this case, quoted above, it will be perceived that the objection is not tenable, and that the allegation is such as to give the defendants notice of what is intended to be recovered.

[3] Appellants contend that, if the plaintiff was entitled to recover any sum as the difference between the $42.50 per acre for which said land was sold by him to defendant A. E.

Whitehead and the $60 per acre for which Whitehead sold it to Saage, it was an action for debt, and was barred by the two years' statute of limitation. Variations of this proposition are presented in appellants' propositions Nos. 4, 5, 8, 9, 10, 13, 15, 17, 18, 20, 21, 22, 33, 37, and 41.

Appellee, in reply to such propositions, asserts:

"They are predicated on the contention that the cause of action was barred by the two years' statute of limitation, and that, while the alleged promise was made in January, 1921, the suit was not filed until February 19, 1924. * * * The defendants having obtained plaintiff's property in January, 1921, by means of false representations and fraudulent promises, and having continually kept the plaintiff in ignorance of their intention not to perform said promises or pay for said property, and there being no notice or discovery of intention not to perform said promises or pay for said property until Christmas, 1922, the filing of suit by the plaintiff on February 19, 1924, was not barred by limitation, as the cause of action did not accrue until such notice or discovery."

It is charged in plaintiff's petition:

That defendants secured possession of his home and other property by means of false and fraudulent representations and promises continued through a series of transactions, one following the other, and that the "plaintiff continuously believed and relied upon the promises and representations of the defendants, and continuously remained in ignorance of the defendants' intention and scheme to swindle, cheat, and defraud him out of his property and not pay therefor or perform the promises and representations made by defendants, * * * and had no occasion to doubt or believe that they would not do as they said they would. That, in continuation of the scheme and conspiracy to swindle, cheat, and defraud the plaintiff, the defendants, during the month of October, 1922, or thereabout, admitted and confessed to the plaintiff that they had cheated and wronged him and deprived him of his property and home aforesaid, and promised and agreed with plaintiff and his wife that they would make restitution therefor, and plaintiff alleges said promises and representations were relied on and believed by the plaintiff. That the defendants made said promises and representations for the false and fraudulent purpose of misleading the plaintiff and lulling him into the belief that eventually he would be settled with and compensated for his property and home, and prevented him from filing suit until his claim had been barred by limitation. That the plaintiff did rely upon and believe said representations and promises, and was induced and persuaded thereby to wait until a short time before this suit was filed. That in fact all the promises and representations alleged in his petition were made with the false and fraudulent purpose and design of not performing or keeping them and in furtherance of the malicious, wicked, and wrongful scheme to cheat and defraud the plaintiff out of all of said property and home. * * * *"

There was evidence before the jury to support each and all of these allegations.

This being a suit for damages suffered by the plaintiff by reason of the false and fraudulent representations made to the plaintiff by defendants and the plaintiff having alleged and proved that his failure to bring suit before the expiration of two years from the date of the original transaction was caused by the alleged confession of defendants that they had wronged him and by their promises to make restitution, such statute of limitation did not begin to run until the defendants' announcement that they would not pay him anything and would not make such restitution. St. Paul Fire & Marine Ins. Co. v. Laster (Tex. Civ. App.) 187 S. W. 969; Continental & Com. Nat. Bank v. Meister (Tex. Civ. App.) 186 S. W. 377; Ross v. Moore (Tex. Civ. App.) 191 S. W. 853; Advance-Rumely Thresher Co. v. Higgins (Tex. Civ. App.) 279 S. W. 531; Pt. Arthur Rice Mill. Co. v. Beaumont Rice Mills, 143 S. W. 926, 148 S. W. 283, 150 S. W. 884, 152 S. W. 629, 105 Tex. 514.

[4, 5] The plaintiff while on the stand testified that he had never signed any written contract. The instrument set out below was tendered him, and he was asked if the signature affixed to it was not his signature. He acknowledged that it was, whereupon the defendants introduced such instrument in evidence. That our holding herein may be more clearly understood in its application to the questions before us, we here set it out in hæc verba:

### "Contract on Real Estate.

"Jan. 29th, 1921.

"That I, A. E. Whitehead, party of the first part has this day contacted with Henry Riger, party of the second part to exchange lots five six seven eight nine teen whith the improvements for Henry Rigers three huñdred and twenty acres about two and half miles from Slaton, better known as south half of survey no 17 block 24 containing three hundred and twenty acres. This does not include any of the said stock of goods or fixtures now contained in said building, and it is father understood that I the said A. E. Whitehead. is to assume the balance diew on the above tract of land described above which is nine thousand six hundred dollars. and the said Henry Riger is to turn over all improvements on the aboove described land including two cars of lumber that is stacked on the above three hundred and twenty acres it is father aggreed that Henry Riger will give the said A. E. Whitehead notes back against his half interest in the above lots for twenty five hundred dollars, payable one two and three years at teen per cent interst the said Henry Riger aggrees to take enough of said stock including fixtures to cover this twenty five hundred dollars he is to take the goods consisting of all kins of feed and seed at the original cost or in other words at what the said goods cost the said A. E. Whitehead. when he purchased thim and the said A. E. Whitehead is this day placing a forfeit of one thousand dollars that he will comply with this contract and should said A. E. Whitehead fail to comply with this contract the one thousand forfit will go to Henry Riger and the said Henry Riger aggrees to this day place one

thousand dollars forfit that he will close the deal and make a good merchantable title to said three hundred and twenty acres of land and should he fail to do so he will forfit to the said A. E. Whitehead the one thousand dollars he is putting up and if in one year time the said Henry Riger see fit to pay to the said A. E. Whitehead six thousand five hundred dollars with legal wrate of interest the said A. E. Whitehead is to deed the above described land back to said Henry Riger. This contract and deal to be closed in ten days."

Appellants contend that, as the transactions between the plaintiff and defendants were evidenced by a written instrument, the trial court should have given to the jury a peremptory instruction to return a verdict in favor of appellants, on the theory that the evidence given by the plaintiff was an attempt to vary the terms of a written contract by parol evidence. The plaintiff's suit, as already stated, was a suit for damages based upon fraudulent representations and promises made by the defendants to the plaintiff whereby plaintiff was misled and induced to turn over his property to the defendants who had converted same. It was not a suit to rescind a contract. Hence he had the right to maintain his suit even as against the fact that a written contract has been executed, because his allegations of fraud related to the inducement to enter into the contract. Especially is this true in the absence of some character of pleadings setting up estoppel. For the trial court to have instructed the jury as requested by appellants, he must have done so in the absence of any pleading authorizing the submission of such issue. In any event, the appellants were not entitled to have a specific issue virtually instructing estoppel when no pleading authorized it. Brann v. Arbuthnot (Tex. Civ. App.) 274 S. W. 661; Bowman Lumber Co. v. Pierson, 221 S. W. 930, 110 Tex. 543, 11 A. L. R. 547; Moody v. Rowland, 99 S. W. 1112, 100 Tex. 363; Climber Motor Corporation v. Fore (Tex. Civ. App.) 273 S. W. 284; Parkersburg Rig & Reel Co. v. Golden (Tex. Civ. App.) 277 S. W. 1106.

Again, the contract as testified to by the plaintiff is not contradictory of the terms of the written contract. The plaintiff testified that the defendants agreed to give him the excess over and above $42.50 per acre which they might realize by a sale of the land by the 1st of January following. The written contract is silent upon that question; hence there is no conflict in the terms. Simpkins' Contracts & Sales (3d Ed.) p. 464.

[6] Appellants attack the judgment of the court upon the ground that exemplary damage should not have been allowed under the pleadings as they stood. Exemplary damages are allowed in those cases in which there is an element of fraud. 17 C. J. § 271, p. 74.

"The question whether exemplary damages will be allowed in actions for injuries to property depends upon the nature of the injury complained of. They will be allowed only where such injury is attended by circumstances of willful fraud, malice, or gross negligence." 17 C. J. § 275, pp. 979, 980.

Where parties are shown to be guilty of such fraud as is shown in this case, and as was found by the jury, with the deliberate intent and purpose of defrauding the appellee out of his property, he is entitled to recover exemplary damages, having shown that he suffered actual damages. Mossop v. Zapp (Tex. Civ. App.) 189 S. W. 979.

We have carefully examined the other questions presented in the motion for rehearing and in the briefs of appellants, and, finding no reversible error, we overrule appellant's motion for rehearing, and affirm the judgment of the trial court.

The original opinion is withdrawn, and this is substituted for same.