E. 775, 78 Am. St. Rep. 124; Gibbons v. German, etc., Co., 30 Ill. App. 263; Fitzgerald v. German, etc., Co., 30 Misc. Rep. 72, 62 N. Y. S. 824; Samuels v. Continental, etc., Co., 2 Pa. Dist. R. 397; American, etc., Co. v. German, etc., Co., 74 Md. 25, 21 A. 553; O'Connor v. Queen, etc., Co., 140 Wis. 388, 122 N. W. 1038, 1122, 25 L. R. A. (N. S.) 501, 133 Am. St. Rep. 1081, 17 Ann. Cas. 1118; Wood, Ins. (2d Ed.) § 103; May, Ins. p. 929. For it is of course contemplated always that the owner will have fire in these places.

[3] Where a loss does come within the contract, the recovery is not dependent upon consumption, or even actual ignition, for a direct loss may otherwise result. The damage may be caused by smoke and soot (Collins v. Delaware Insurance Co. of Philadelphia, 9 Pa. Super. Ct. 576; O'Connor v. Queen Ins. Co., 140 Wis. 388, 122 N. W. 1038, 1122, 25 L. R. A. [N. S.] 501, 133 Am. St. Rep. 1081, 17 Ann. Cas. 1118); by heat (Cannon v. Phœnix, etc., Co., 110 Ga. 563, 35 S. E. 775, 78 Am. St. Rep. 124); by water (Geisek v. Crescent Mut. Ins. Co., 19 La. Ann. 297; Lewis v. Springfield, etc., Co., 10 Gray [Mass.] 159; Cohn v. National Insurance Co., 96 Mo. App. 315, 70 S. W. 259); by fall of building (Lewis v. Springfield, etc., Co., 10 Gray [Mass.] 159); by explosion (Waters v. Merchants', etc., Co., 11 Pet. 213, 9 L. Ed. 691); by theft as a result of the fire (Queen, etc., Co. v. Patterson, 73 Fla. 665, 74 So. 807, L. R. A. 1917D, 1091; Tilton v. Hamilton, etc., Co., 14 How. Prac. (N. Y.) 363; Newmark v. Liverpool, etc., Co., 30 Mo. 160, 77 Am. Dec. 608); or by any other method directly due to the fire.

[4] The contract of insurance contemplates that the insurer will pay to the insured the damages for all direct loss proximately caused by fire within the meaning of the policy. A friendly fire is not within the undertaking of the insurance company at all. If it were, the company would be liable, as in a case of unfriendly fire, for all direct loss or damage, irrespective of destruction or of actual ignition, and the fact that in this case there was an actual consumption of the insured property is of no importance in determining the liability of the insurance company. If the fire in the furnace was such a fire as the company insured against, then it would be liable for any direct loss or damage therefrom, and it would follow the insured could recover his damage for loss occasioned by the cracking of the plaster in the furnace basement from the heat of the furnace, for the cracking of the paper on the walls from the heat of the grate, and for damage to the decoration and draperies through smoke and soot from the furnace or chimney place, and even for the replacement of furnace, grate, and range oven when burned out, for those clearly would be losses directly due to the respective fires. Those are not extreme illustrations, but liability in each instance would follow if the fire in this case be held to be within the policy. In the sense in which the word "fire" is used in the policy, there has been no fire so long as it is kept within the proper and accustomed place. In common parlance one has not had "a fire" so long as it has only burned in the place where it was intended to burn, and the sense in which that word is used in common parlance accurately indicates the sense in which it is employed in a fire insurance policy.

[5] The point is made by appellee that there are numerous exceptions to the liability of the insurance company printed in the policy, and the argument follows that this loss not falling within one of the exceptions is therefore within the contract. This by no means follows. In the very nature of an exception it is something taken out of the instrument, whether statute, grant, or contract, and is of a kind dealt with in the contract. Where the matter being considered is not within the contemplation of the parties to the contract in the first place, there is no need of an exception, and, since as we think the fire in this case was without the contract of insurance, the failure to except it cannot bring it within.

We recommend that the question certified be answered in the affirmative.

CURETON, C. J. The opinion of the Commission of Appeals answering the certified question is adopted and ordered certified.

---

## WHITEHEAD et al. v. REIGER.
### (No. 894–4604.)

Commission of Appeals of Texas, Section B.
May 23, 1928.

**1. Appeal and error ⬅218(2)—Filing motion for verdict on findings constitutes affirmation that findings were supported by evidence.**

Filing of motion for a verdict based on the findings of the jury constitutes an affirmation that such findings were supported by the evidence.

**2. Specific performance ⬅29(2)—Specific performance of land contract is not decreed, unless land is described, or contract furnishes means of identification.**

Specific performance of contract to convey land will not be decreed, unless parties thereto have described the land to be conveyed in contract, or unless by such contract they have furnished the means by which the land can be identified with reasonable certainty.

**3. Exchange of property ⬅3(1)—Description of lots in exchange contract held defective as constituting patent ambiguity not to be aided by parol evidence.**

Description of lots by number only in contract for exchange of land *held* defective as con-

stituting a patent ambiguity which could not be aided by parol evidence for purpose of making written instrument apply to any particular lots.

**4. Fraud ☜49—Written instrument, executed before deed, and void for insufficient description, need not be pleaded or proven to recover for fraud in transaction.**

In suit to recover damages for fraud in inducing plaintiff to part with property, it was not necessary for plaintiff to plead and prove written contract entered into before execution of deed conveying property, where such contract was void because of defective description of lots agreed to be conveyed therein.

**5. Limitation of actions ☜100(3)—Limitations will not bar cause of action for fraud inducing plaintiff to part with property, unless fraud was discovered within period of limitation (Vernon's Ann. Civ. St. 1925, art. 5526).**

Cause of action for fraud in inducing plaintiff to part with property is not barred by two-year statute of limitations (Vernon's Ann. Civ. St. 1925, art. 5526), unless plaintiff discovered fraud within period of two years before instituting suit.

**6. Limitation of actions ☜100(1, 11)—Fraud prevents running of limitation only until discovered or until discoverable by reasonable diligence.**

Fraud will only prevent the running of statute of limitation until the fraud is discovered, or by exercise of reasonable diligence might have been discovered.

**7. Limitation of actions ☜95(1)—Limitation as to cause of action to recover excess on resale of land pursuant to contract did not run until reasonable time after vendor learned of resale.**

Where contract for exchange of land provided for payment of excess to vendor of all received over certain amount, but did not provide for such payment immediately on resale, limitation as to cause of action therefor did not begin to run immediately from time vendor learned of resale, since law implies only that payment should be made within a reasonable time thereafter.

**8. Limitation of actions ☜199(1)—Approximately 90 days held not as matter of law unreasonable time for payment of excess on resale of land as bearing on limitations.**

Approximately 90 days for payment of excess received on resale of land pursuant to contract *held* not as a matter of law more than a reasonable time as bearing on running of limitation against vendor's cause of action to recover excess received.

**9. Trial ☜351(2)—Failure to request submission of issue of limitation to jury constituted waiver of such affirmative defense.**

Failure to request submission to jury of issue of limitation, constituting clearly an issue of fact for determination of jury, constituted a waiver of such affirmative defense.

Error to Court of Civil Appeals of Seventh Supreme Judicial District.

Suit by Henry J. Reiger against A. E. Whitehead and others. Judgment for plaintiff was affirmed by the Court of Civil Appeals (282 S. W. 651), and defendants bring error. Affirmed.

Bledsoe, Woodward & Higgins, of Lubbock, and Chas. L. Black, of Austin, for plaintiffs in error.

Pearce, Stewart & Triplett, Robert H. Bean, and Bean & Klett, all of Lubbock, for defendant in error.

LEDDY, J. Defendant in error was the owner of 320 acres of land situated near Slaton, Tex., which he and his family occupied as a homestead. He had placed certain lumber and building material on his premises of the value of $840, preparatory to building. He was also the owner of certain live stock and personal property of the approximate value of $2,000. He entered into a series of trades with the plaintiffs in error, and, when the dealings between the parties ended, defendant in error's property was gone, and he had not received anything of substantial value in return therefor.

He brought this suit against plaintiffs in error to recover damages alleged to have been sustained by him, in which it was charged that plaintiffs in error, through false and fraudulent promises and representations, cheated and swindled him out of his 320-acre home and all of his personal property. We refer to the opinion of the Court of Civil Appeals for a full and complete statement of the pleadings. See 282 S. W. 651.

The case was tried to a jury and submitted on special issues, all of which were answered in favor of defendant in error. The issues submitted and the answers of the jury thereto read as follows:

"(1) Do you find that the defendants induced the plaintiff to convey the south half of survey 17 in block 24 in Lubbock county, Tex., by means of false representations and fraudulent promises, if any, as alleged by plaintiff in his amended original petition?" Answered: "Yes."

"(2) What was the reasonable market value of the south half of survey 17 in block 24 in Lubbock county, Tex., on January 31, 1921?" Answered: "$60 per acre."

"(3) Do you find that the defendants induced the plaintiff to convey the lumber and building material in controversy by means of false representations and fraudulent promises, if any, as alleged by plaintiff in his amended original petition?" Answered: "Yes."

"(4) What was the reasonable market value of said lumber and building material on January 31, 1921?" Answered: "$840."

"(5) Do you find that the defendants induced the plaintiff to convey the live stock and other personal property described in the 13th paragraph of plaintiff's amended original petition by means of false representations and fraudulent promises, if any, as alleged by plaintiff in his amended original petition?" Answered: "Yes."

---

☜For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

"(6) What was the reasonable market value of such live stock and other personal property on April 30, 1921, after deducting the amount plaintiff was on said date indebted to the defendants?" Answered: "$1,665."

"(7) What amount of exemplary damages, if any, do you find in favor of plaintiff against the defendants?" Answered: "$4,000."

[1] Plaintiffs in error did not challenge the sufficiency of the evidence to support any of the findings of the jury. On the other hand, they filed a motion for a verdict based upon the findings, which was an affirmation that such findings were supported by the evidence. Fire Ass'n v. Moss (Tex. Civ. App.) 272 S. W. 555.

It is first contended that defendant in error is not entitled to recover on account of the fraudulent representations and promises which he alleges induced him to execute the deed to his property because of his admission upon the trial that he had executed a written contract to convey said property, and it was not pleaded that there was any fraud or mistake in the execution of same. The petition, in fact, made no reference whatever to any written contract. It is asserted that the material question was, not whether the execution of the deed was induced by fraud, but whether the antecedent written contract was so induced. If the written contract was a valid one, it would, of course, be controlling, in the absence of allegation and proof that its execution was induced through fraud or mistake. The written contract relied upon in part provided:

"That I, A. E. Whitehead, party of the first part, has this day contracted with Henry Reiger, party of the second part, to exchange lots 5, 6, 7, 8, 9, 10, with improvements, for Henry Reiger's 320 acres about 2½ miles from Slaton, better known as the south half of survey 17, block 24, containing 320 acres," etc.

The contract does not show in what city, county, or state the lots to be conveyed are situated, nor does it furnish the means by which the description thereof can be made definite or certain.

[2] It has been frequently decided that specific performance of a contract to convey land will not be decreed, unless the parties thereto have described the land to be conveyed in the contract, or unless by such contract they have furnished the means by which the land can be identified with reasonable certainty. Jones v. Carver, 59 Tex. 293, and authorities there cited.

[3] The defective description of the lots to be conveyed by Whitehead constituted a patent ambiguity, and could not be aided by parol evidence for the purpose of making the written instrument apply to any particular lots. Norris v. Hunt, 51 Tex. 612; Coker v. Roberts, 71 Tex. 597, 9 S. W. 665; Zanderson v. Sullivan, 91 Tex. 499, 44 S. W. 484; Cammack v. Prather (Tex. Civ. App.) 74 S. W. 354.

[4] The written contract was void; hence it was unnecessary that Reiger should plead and prove that its execution was procured through fraud or mistake. He had the right to ignore such contract and predicate his action upon the fraud used by plaintiffs in error to procure the execution of the deed to his property.

The further contention is made that defendant in error's cause of action is barred by the two-year statute of limitation (Vernon's Ann. Civ. St. 1925, art. 5526). He alleged in his petition that plaintiffs in error entered into a conspiracy to cheat and defraud him out of his property; that he was induced by the fraudulent promises and representations to convey to A. E. Whitehead his farm and certain lumber and building material situated thereon; that his land was of the actual value of $60 per acre; and that plaintiffs in error fraudulently promised him he might have, and would receive, all of the excess from the proceeds of the resale of said land, should the same be sold for more than $42.50 per acre on or before January 1, 1922.

[5] It is strenuously insisted that defendant in error's knowledge of the resale of the land and of the failure of plaintiffs in error to pay him said excess from such sale set in motion the statute of limitation, and that, as his suit was not filed until February 19, 1924, it was barred by the two-year statute of limitation. It appears that the land was resold by Whitehead in August, 1921. Defendant in error testified that he first learned of the resale of the land "in the fall of 1921," and that he thought at that time the land had been sold in the fall of 1921. For defendant in error's cause of action to have been barred, he must have discovered prior to February 19, 1922, that the promise made by plaintiffs in error was fraudulent; that is, that it was not made with the intention of being performed.

[6] The rule is well settled in this state that fraud will only prevent the running of the statute of limitation until the fraud is discovered, or until by the exercise of reasonable diligence it might have been discovered. First State Bank v. Visart (Tex. Civ. App.) 259 S. W. 987; Kuhlman v. Baker, 50 Tex. 636; Cooper, Adm. v. Lee, 75 Tex. 122, 12 S. W. 483.

[7] The contract testified to by defendant in error did not require that he be paid the excess his farm brought over the $42.50 per acre immediately upon the resale thereof. In fact, no time in which such payment was to be made was specified. This being true, the law would imply that it should be paid within a reasonable time thereafter. Limitation, therefore, did not begin to run from the time defendant in error learned of the resale of his property. His cause of action would not arise until he discovered that the promise made in reference to paying him the excess on the resale of the land *was made with the fraudulent intent not to perform the same.*

[8] Defendant in error's testimony would have justified a finding, had the issue been submitted, that he did not learn of the resale of the land until about December 1, 1921. In order for his cause of action to be barred, it must have been shown that he discovered that the promise made to him by plaintiffs in error was fraudulent within less than 90 days after such resale took place. Inasmuch as plaintiffs in error had a reasonable time after such resale to perform their promise, it cannot be said as a matter of law that the period from December 1, 1921, to February 19, 1922, was more than a reasonable time for such promise to be performed.

[9] Plaintiffs in error duly filed their plea of limitation, but the issue was not submitted to the jury, nor did plaintiffs in error request the submission of such issue. The issue of limitation, under the state of the record, was clearly one of fact for the determination of the jury. This issue constituting an affirmative defense, the failure on the part of plaintiffs in error to request that the same be submitted to the jury was a waiver thereof. Ormsby v. Ratcliffe (Tex. Sup.) 1 S.W.(2d) 1084; Bulin v. Smith (Tex. Com. App.) 1 S. W.(2d) 591, not yet officially reported.

Defendant in error testified positively that he believed plaintiffs in error intended to perform their promise until in October, 1922, at which time one of the plaintiffs in error confessed to him that they had not treated him right, but that they intended to settle with him for the amount due him by reason of the resale of the place, and that he believed and relied upon this representation until December, 1922, at which time plaintiffs in error repudiated their promise, and notified him they would make no settlement.

The evidence in this case indicates a clear, deliberate, and premeditated scheme, successfully carried out, to defraud defendant in error of his property.

We recommend that the judgment of the Court of Civil Appeals be affirmed.

CURETON, C. J. Judgments of the district court and Court of Civil Appeals both affirmed, as recommended by the Commission of Appeals.