## SMITH v. JAGGERS.   (No. 3222.)

Court of Civil Appeals of Texas.   Amarillo.
April 17, 1929.

Rehearing Denied May 8, 1929.

Lockhart, Garrard & Brown, of Lubbock, for appellant.

Vickers & Campbell and Walter F. Schenck, all of Lubbock, for appellee.

HALL, C. J. The appellant, Smith, sued Jaggers, and in the original petition alleged that he was the owner of labor No. 6, strip No. 3, league No. 102, of the Jeff. Davis county school lands in Cochran county; that Jaggers, by force, had ejected plaintiff's tenant from the premises and taken possession thereof, and was preparing to cultivate the land, claiming it as his own. He alleges that he purchased the premises from the defendant, Jaggers, for a valuable consideration in January, 1926, and prays for an injunction restraining Jaggers from in any way interfering with plaintiff or his tenants in the peaceable possession of the land.

Jaggers answered, alleging, in substance, that prior to January 23, 1926, he was the owner of the tract of land in question, containing 208.66 acres; that he had title and possession thereof, and at that time owed one Charles Beard $9 per acre for said land, which was secured by a first lien, and owed Mrs. Minnie Slaughter Veal the same amount, which was secured by a second lien; that the first lien was not due, but had been paid; that the indebtedness to Mrs. Veal was due, but he had arranged to pay the amount; that prior thereto, the plaintiff Smith had a suit pending against Mrs. Veal for an alleged indebtedness aggregating several thousand dollars, pending in the district court of Dallas county; that plaintiff approached him on or about January 23, 1926, and proposed that defendant execute a deed, conveying the land to him, and that he (Smith) would pay the indebtedness against it as it matured, and would sell the land in the summer or fall of 1926 for the best price obtainable, subject to the liens above mentioned, and out of the consideration would pay a debt of $1,240 which defendant owed him, and would pay the expenses of the sale, the remainder of the consideration to be paid to the defendant; that he and his wife made a deed purporting to convey the land to plaintiff in fee simple, with the understanding and agreement as aforesaid, and with no intention of passing title to plaintiff; that the deed was, in fact, a mortgage, and plaintiff was to hold the title in trust to secure the $1,240 which defendant owed him; that at and prior to said time the land was defendant's homestead, and was used by him and his family as such; that it was reasonably worth the sum of $40 per acre, and was worth $22 per acre net, over and above the indebtedness against it.

He alleges that, when the Beard indebtedness matured, he paid the installment amounting to $466, and paid and caused to be paid to the plaintiff the sum of $1,360, which amount was in full of any and all demands the plaintiff had against him. He demanded that plaintiff reconvey the land, which plaintiff has failed and refused to do. Plaintiff refused to pay any part of the indebtedness due Mrs. Veal as it matured, and by reason of such failure Mrs. Veal instituted suit and foreclosed her lien, and had the property sold under order of sale, at which sale plaintiff became the purchaser. He says he could and would have arranged to pay the indebtedness to Mrs. Veal and prevented the foreclosure suit, if plaintiff had complied with his agreement and reconveyed the property to him; that plaintiff fraudulently permitted the foreclosure proceedings to terminate in a judgment, in order that he might acquire the title under the sale, and for the purpose of defeating defendant in his title and claim to the land, and by reason of his fraud defendant has been damaged in the sum of $4,516, being the net value of the premises over and above the indebtedness against it, has been deprived of the reasonable rental value of the land for the years 1926 and 1927 in the aggregate amount of $1,000, and has been further damaged in the sum of $66, which he paid Beard in February and March, 1926, after he made the purported deed to plaintiff.

He alleges that the promises and representations of Smith, as aforesaid, were false;

that he had no intention of complying with them at the time they were made; they were made to obtain the legal title to the land and for the purpose of permitting foreclosure, so he could acquire the title at the sale and thus defraud defendant; that he had such purposes in mind, and such was his intention, at the time he made the promises; that he failed and refused to pay any of the indebtedness as it matured and by reason of holding the legal title, deprived the defendant of the opportunity and power to procure another loan and handle the property, so as .to prevent the foreclosure, and that defendant could not sell the land on account of the outstanding deed to plaintiff. He further alleges that plaintiff acted maliciously, and with the intent to damage, worry, and humiliate him, and for the purpose of acquiring his land without paying value therefor, and prays for exemplary damages by reason thereof in the sum of $5,000, together with reasonable attorney's fees; that defendant's wife never acknowledged said deed separately and apart from him, as required by law, and, the deed having conveyed a homestead, it is therefore void; that plaintiff paid no consideration to him at the time the deed was executed, and never promised to pay him any consideration therefor; that he relied on all the promises made by the plaintiff, and believed that plaintiff would comply with his agreement; that he would not otherwise have made the deed as aforesaid, and but for said promises he would not have paid the indebtedness .to Beard, nor would he have paid the $1,360 to plaintiff on such representations, and would not have surrendered possession of the land, but for such fraudulent representations; that plaintiff has never attempted to sell the land, nor offered to pay off the liens held by Mrs. Veal and Beard. He represented that he could and would successfully defeat Mrs. Veal in her suit in Dallas county, and offset her claim with amounts which she owed him, and would prevent her from foreclosing the lien and secure a release from her direct or through the court, at which time the defendant would owe him only the amount of the Veal lien, and that he would permit the indebtedness to be renewed and extended until it was settled. He alleges that plaintiff never intended to pay the Veal lien at the time he made such representations fraudulently for the purpose of inducing the defendant to convey the land to him; that such fraudulent representations were made in Cochran county.

He prays for actual damages in the sum of $5,982, exemplary damages in the sum of $5,000, and all costs of suit. He prays, in the alternative, that, in the event he is not entitled to recover the damages, then that he have judgment for the sum of $466 paid Beard, with legal interest thereon from February 1, 1926; the further sum of $1,360 which he paid plaintiff, and that he be de-

creed a lien upon the land to secure said last-named amount, and for general relief.

It appears that Smith abandoned his·attempt to procure an injunction, and by a second supplemental petition, replied by general and numerous special exceptions, a general denial, and specially alleged that on or about January 23, 1926, the defendant was the owner of the land in question and owed approximately $2,000 to one Beard, of Kansas City, secured by a lien, and further owed Mrs. Veal the sum of about $9 per acre; and was indebted to plaintiff in the sum of $1,248.95, which was not secured by a lien on the land; that the indebtedness of $1,248.95 arose by reason of the fact that the plaintiff had paid a note executed by Jaggers, with plaintiff as security, to the First National Bank of Lubbock, Tex., which Jaggers was not able to pay at its maturity and which said note, when paid by plaintiff, had been transferred and assigned to him by the bank; that in January, 1926, Jaggers was unable to pay any of the interest due on the land, either to Beard or Mrs. Veal, and was also unable to pay the taxes for the year 1925, or to pay the note due the First 'National Bank upon which plaintiff was security; that defendant proposed to convey to plaintiff either of five tracts of land which he then owned, provided plaintiff would cancel the debt he held against defendant and would assume the debts against the land; that plaintiff selected the land described 'in the petition, and defendant and his wife executed and delivered to plaintiff a general warranty deed conveying the land in fee simple; that after such conveyance defendant approached plaintiff and requested that he be allowed to sell the land and pay plaintiff the debts due him, and plaintiff agreed to give him such privilege until January 1, 1927.

Plaintiff further alleges that the defendant failed to sell the land during 1926, or at any other time, and thereby forfeited any and all right to sell the same, whereby plaintiff's deed became absolute on the 1st day of January, 1927. He alleges that defendant did not pay him any sum of money at any time. It is further alleged that, after plaintiff received the deed to the land, he paid the taxes thereon for the years 1925 and 1926 to the amount of $512.80; that he paid the interest due Beard in the sum of $170; that Mrs. Veal recovered a judgment against plaintiff and defendant for approximately $2,800, foreclosing the vendor's lien against the land; that thereafter the sheriff of Cochran county advertised and sold the premises under said judgment to the highest bidder for cash, at which sale plaintiff became the purchaser, paying therefor approximately the sum of $2,800. He prays that the defendant take nothing against him and, in the alternative, that, if it should be held that the deed referred to was, in fact, a mortgage, then that the same be foreclosed against the land; that

the land be ordered sold, and from the proceeds thereof plaintiff's debt be paid.

By supplemental answer, Jaggers alleged that Smith had sold the land to third parties, by reason of which fact the title and possession could not be restored to him. There is no evidence to support this allegation, and it is admitted that Smith owned the land at the time of the suit.

The issues were submitted to a jury and resulted in a judgment, in which it is recited that; it appearing to the court that the land in question is the property of the plaintiff, and that the conveyance of said land to the plaintiff by the defendant had been ratified and confirmed, and that defendant had sued for damages for breach on the part of plaintiff of his refusal to reconvey the premises, as he had contracted to do; that plaintiff's title and possession to said land be quieted and freed from any claim or interest of the defendant. The judgment further recites that, it appearing that the cash market value of the land was $6,781.45 on February 21, 1927, and that the incumbrances against it aggregated $3,981.86, and that on said date the defendant owed plaintiff a balance of 95 cents, leaving a net equity or value in the sum of $2,798.64. Judgment was rendered for Jaggers for that amount and all costs of suit.

In response to the issues submitted, the jury found, in effect, that Jaggers conveyed the land to Smith, with the agreement that the latter would reconvey when Jaggers had paid him the $1,248.95 due from Jaggers to Smith for paying off the note to the bank; that Jaggers offered to pay Smith whatever sum of money the latter held against the land, and demanded of Smith a reconveyance; that Smith never offered to reconvey; that on February 21, 1927, Jaggers owed Smith on the transaction concerning the land only 95 cents; that Smith received from S. E. Cone, on account of rents from the land, $158.34; that Smith expended $420.95 for Jaggers during the year 1926, which was afterwards paid to Smith by Jaggers; that Smith received $415 rents from the land in 1926 from the tenant, Ward; that the reasonable market value of the land in the early part of 1927 was $32.50 per acre.

We deem it unnecessary to consider the propositions urged in detail. The court did not err in overruling the plaintiff's general demurrer to Jaggers' answer. In actions arising from fraud and deceit, the defrauded party has either of two remedies. He may sue for rescission of the contract, or waive the right to rescind and sue for damages. In the instant case, Jaggers sued to have the deed by which he and his wife conveyed the land to Smith, established as a mortgage. He also sued for damages for fraud on the part of Smith in inducing him to execute the deed and for breach of the contract. He is entitled, under his pleadings, to recover such actual damages as he has suffered by reason of Smith's breach of the terms of the agreement under which the deed was delivered; that is, such damages as are the natural and probable consequences of the breach and in contemplation by the parties at the time the contract was made, and, in addition thereto, exemplary damages in the event fraud or oppression is shown. Thrower v. Brownlee (Tex. Com. App.) 12 S.W.(2d) 184; Markham Irrigation Co. v. Brown (Tex. Com. App.) 292 S. W. 863; Humble Oil & Refining Co. v. Wood (Tex. Com. App.) 292 S. W. 200; Belt v. McGehee (Tex. Civ. App.) 9 S.W.(2d) 407; Connally & Shaw v. Saunders (Tex. Civ. App.) 142 S. W. 975; Handy v. Roberts (Tex. Civ. App.) 165 S. W. 37; Thouron v. Skirvin, 57 Tex. Civ. App. 105, 122 S. W. 55; Whitehead v. Reiger (Tex. Civ. App.) 282 S. W. 651; Id. (Tex. Com. App.) 6 S.W.(2d) 745; Oliver v. Chapman, 15 Tex. 400; Graham v. Roder, 5 Tex. 141; R. S. art. 4004.

The judgment will have to be reversed for fundamental errors. R. S. art. 2211, provides that the judgment shall conform to the pleadings, the nature of the case proved, and the verdict. The jury having found that the deed was intended as a mortgage, and Smith having prayed that, if it be found to be a mortgage, then that it be foreclosed upon the land, and the land sold for the payment of the indebtedness due him, the judgment vesting title in Smith is not supported by the pleadings or the verdict. The rule is well established that the trial court must either render a judgment in accordance with the verdict or set the verdict aside and order a new trial. The court found, as a fact, which is recited in the judgment, that Jaggers had confirmed and ratified the transaction as a sale. We presume this was intended as a conclusion of law, based upon the idea that, by suing for damages, Jaggers could not question the character of the instrument as a deed. We think this is error. The fact that he sued for damages for fraud and for breach of the contract does not confirm and ratify the transaction as a sale, but as a mortgage to secure Smith for his debt, and for such other sums as Smith might have expended under the agreement in paying off incumbrances, taxes, and expenses.

In his pleading, Jaggers sought to recover the reasonable rental value of the land for the years 1926 and 1927 as part of his damages. The reasonable rental value during that time was not submitted in the issues to the jury, but the court inquired of the jury as to the rents collected by Smith from the tenants who occupied the land during these years. There is no basis in the pleadings for any such issues, and the findings thereon cannot be considered in rendering a judgment.

The jury was not asked to find the amounts for which the land was incumbered,

nor were the issues of fraud or homestead submitted in the court's charge. Having failed to request the submission of these issues, the parties must be held to have abandoned them, and there was no sufficient basis for a judgment, because the court was not authorized to find these amounts. This is also true with reference to the amount of the incumbrances which Smith had agreed to pay before reconveying the land to Jaggers. Bulin v. Smith (Tex. Com. App.) 1 S.W.(2d) 591; Ormsby v. Ratcliffe (Tex. Sup.) 1 S.W.(2d) 1084. Smith alleged that he paid interest on the Beard debt to the extent of $170. This issue was not submitted. After persistent effort, we have not been able to ascertain how the court arrived at the exact amount of the judgment in favor of Jaggers, but are convinced, from a consideration of the amounts which could be properly considered and found by the jury, the judgment is erroneous.

Since the judgment as entered is not supported by either the pleadings or the verdict, fundamental error is apparent on the face of the record, and requires us to reverse the judgment. Grissom v. Lopez (Tex. Civ. App.) 280 S. W. 613; Knox v. Brown (Tex. Com. App.) 277 S. W. 91; Id. (Tex. Civ. App.) 261 S. W. 791; White v. Cooksey (Tex. Civ. App.) 253 S. W. 548; Branch v. Smith (Tex. Civ. App.) 245 S. W. 799; Payne v. Godfrey, 61 Tex. Civ. App. 40, 129 S. W. 163; San Antonio Traction Co. v. Yost, 39 Tex. Civ. App. 551, 88 S. W. 428.

The case seems to have been tried upon the theory that Smith had converted the land. An action for trover and conversion relates only to personal property, and has no application to a case where a party is wrongfully deprived of real estate. The damages, if any recoverable in this case, are governed, not by the rules relating to conversion, nor as between a trustee and the cestui que trust, but actual damages, if any, must be measured by the ordinary rules governing in breach of contract. The right to exemplary damages, if any, and the rules by which they are to be measured, are announced in Thouron v. Skirvin, Belt v. McGehee, and similar cases cited supra.

The land never became the property of Smith, if the deed was in fact a mortgage, and intended by the parties to be merely a lien to secure Jaggers' indebtedness. We are not referred to any evidence which tends to support the theory that Jaggers ever ratified and confirmed the transaction as a deed. Appellant's complaint, based upon the fact that the judgment gave him no credit for the amounts shown by the undisputed evidence to be due him by appellee, is without merit. The jury found that the original indebtedness had all been repaid, except 95 cents, and, if he failed to get credit for the sums which he alleges he paid as taxes and interest, he cannot complain because of his failure to ask that these matters be submitted to the jury.

We cannot assent to the proposition that Smith was entitled to a credit for the $2,800 judgment which Mrs. Veal recovered, and which he alleges he paid. Jaggers alleges that, under the contract, Smith was to pay this indebtedness and avoid a suit, and that the suit is the result of fraud on his part in an effort to acquire the land under the foreclosure proceedings. This issue was not submitted, but, if the fact alleged is true, he could recover only such an amount as would be necessary to satisfy the debt before the institution of the suit.

For the reasons stated, the judgment is reversed, and the cause is remanded.