

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-24-00224-CV

_____

DENISE GRAY, ROWDY WICKLINE, DAVID AGRUE, JEREMY PURGASON, ASHLEY PURGASON, BARBARA COBURN, ROBERT BELL, KENNETH HOOPER, AND GAVIN FRAZIER, Appellants

V.

RIVER RUN PROPERTY OWNERS ASSOCIATION, INC., Appellee

On Appeal from County Court at Law
Hood County, Texas
Trial Court No. C08549

Before Birdwell, Bassel, and Walker, JJ.
Memorandum Opinion by Justice Walker

**MEMORANDUM OPINION**

Appellee River Run Property Owners Association (the POA) sued Appellants Denise Gray, Rowdy Wickline, David Agrue, Jeremy Purgason, Ashley Purgason, Barbara Coburn, Robert Bell, Kenneth Hooper, and Gavin Frazier[1] seeking declaratory relief regarding its authority over, and representation of, the River Run Addition (the Subdivision) and damages for Appellants' breach of certain restrictive covenants. Appellants filed counterclaims seeking (1) competing declaratory relief; (2) an injunction preventing the POA from collecting certain assessments, fines, costs, or other charges from lot owners; and (3) breach-of-contract damages arising from the POA's past collection of assessments and other charges. Following a trial, a jury found, among other things, that the POA was properly formed; that its bylaws were properly adopted; that Appellants were not "entitled to challenge [the POA's] right to enforce" the Subdivision's dedicatory instruments; that the Subdivision's dedicatory instruments authorized the POA "to set the amount for assessments, fines, penalty fees, [and] transfer fees"; and that Appellants had breached the dedicatory instruments by failing to pay their regular assessments when due. The trial court denied Appellants' motion to disregard the verdict and signed a judgment awarding the POA declaratory relief and damages in accordance with the jury's findings.

---

[1] The POA originally sued Gray and Wickline. The remaining Appellants later intervened in the lawsuit and filed claims against the POA. The POA then amended its petition to seek relief against the intervenors as well. For ease of discussion, we sometimes refer to all Appellants' affirmative claims as "counterclaims."

In what amounts to a legal-sufficiency challenge, Appellants appeal the trial court's denial of their motion to disregard the jury's verdict.[2]  In three interrelated issues, they contend that—despite the jury's findings to the contrary—the POA was not properly formed and has no authority to charge lot owners assessments, fines, or fees.  Raising several responsive issues of its own, the POA argues that the trial court properly entered judgment based on the jury's verdict and that Appellants have failed to show harmful error because they have not challenged—in any meaningful way— the sufficiency of the evidence supporting the jury's finding that they were not "entitled to challenge [the POA's] right to enforce" the Subdivision's dedicatory instruments.  We will affirm.

## I. BACKGROUND

The Subdivision was developed by Lake Marketing Consultants, Inc. (the Developer).  On October 18, 1982, the Developer executed a Declaration of Restrictions and Reservations for the Subdivision (the Declaration) and filed it with the Hood County clerk.  Among other things, the Declaration provides that

> Each and every owner of any and all lots within the subdivision unit shall become a member of the subdivision property owners association at the time such subdivision property owners association is formed. Each and every owner covenants and promises to pay, to the Developer and/or the property owners association, as the case may be, when due,

---

[2]*See Quaker Petroleum Chems. Co. v. Waldrop*, 75 S.W.3d 549, 553 (Tex. App.—San Antonio 2002, no pet.) ("We review the denial of a motion for JNOV under a legal sufficiency standard . . . ." (citing *Navarette v. Temple Indep. Sch. Dist.*, 706 S.W.2d 308, 309 (Tex. 1986))).

any and all dues and maintenance fees. . . . Each and every owner of any and all lots within the subdivision unit covenant and agree that the Developer and/or the property owners association, as the case may be, and their successors and assigns shall have a lien upon the subject lot(s), inferior only as the lien for taxes and any duly recorded mortgage, to secure the payment of such dues and maintenance fees and any reasonable court costs and attorney's fees incur[r]ed in connection with the collection of same.

Thus, the Declaration contemplated the formation of a property owners association that all lot owners would be required to join and that had the authority to charge dues and membership fees.

In July 1983, the POA was formed. Its articles of incorporation—which were signed by the same three individuals who signed the Developer's articles of incorporation—specifically reference the Declaration and provide that the POA has the authority to "[f]ix, levy, collect[,] and enforce payment by any lawful means, all charges or assessments" pursuant to its terms. In December 1983, the Developer executed a warranty deed transferring the Subdivision's common areas, roads, and Lot 1 to the POA.

In April 1984, the POA's board of directors adopted its initial bylaws. These bylaws have been amended six times. The POA's current bylaws (the 2015 Bylaws), which were recorded in the Hood County deed records in April 2015, provide that the POA is required to charge and collect a transfer fee every time that a lot is transferred; that all lot owners are subject to regular, special, and individual assessments as established by the POA's board of directors; that the POA can charge interest, late

4

fees, and collection costs on delinquent assessments and can assess fines for rule violations; and that a new lot owner must pay a residence-permit fee to the POA before moving in.

In addition to amending its bylaws in 2015, the POA also enacted certain rules and regulations (the Rules and Regulations) that were recorded in the Hood County deed records. The Rules and Regulations provide, inter alia, that the POA's board of directors may levy fines against lot owners for rule violations and charge them a daily penalty until the violation is corrected.

In 2020 and 2021, the POA assessed a number of fines and other charges against Gray and Wickline[3] for uncured violations of the Rules and Regulations. Even though Gray had previously served as a director and as president of the POA and in those capacities had been actively involved in assessing fines and taking legal action against other lot owners to enforce the 2015 Bylaws and the Rules and Regulations, she and Wickline refused to pay the fines and other charges that the POA had levied against them. As a result, the POA filed suit, ultimately seeking both declaratory relief and damages.[4]

Gray and Wickline filed counterclaims against the POA seeking competing

---

[3]Gray and Wickline are married.

[4]The POA originally filed suit in the justice court, but the case was ultimately appealed to the county court at law for a de novo trial. *See* Tex. R. Civ. P. 506.1, 506.3.

declaratory relief; an injunction preventing the POA from collecting assessments, fines, costs, or other charges from lot owners; and damages. The remaining Appellants ceased paying assessments and other amounts charged by the POA and intervened in the lawsuit, seeking the same affirmative relief as Gray and Wickline.

In response to the Appellants' claims, the POA asserted a number of affirmative defenses, including waiver, ratification, unclean hands, limitations, estoppel, and laches. In essence, the POA contended that the Appellants had—in one way or another—forfeited their right to challenge the validity and legal effect of the dedicatory instruments that the POA was seeking to enforce against them.

As noted, following a trial, the jury found in favor of the POA on the major contested issues, including whether—in light of the POA's affirmative defenses—Appellants were entitled to challenge the dedicatory instruments. The trial court denied Appellants' motion to disregard the verdict and signed a judgment awarding the POA declaratory relief and damages in accordance with the jury's findings. This appeal followed.

## II. DISCUSSION

As outlined above, Appellants raise three interrelated issues in which they challenge the legal sufficiency of the evidence to support the jury's findings that, among other things, (1) the POA was properly formed; (2) its bylaws were properly adopted; and (3) the Subdivision's dedicatory instruments authorized the POA to set the amounts for assessments, fines, penalty fees, and transfer fees. But before we

address Appellants' issues, we must first consider the argument raised in the POA's first responsive issue—that any alleged error about which Appellants complain has been rendered harmless by their failure to challenge the jury's finding that they were not entitled to contest the POA's right to enforce the Subdivision's dedicatory instruments.

## A. BECAUSE APPELLANTS FAILED TO CHALLENGE ALL INDEPENDENT GROUNDS FOR THE JUDGMENT, THEY HAVE FAILED TO SHOW HARMFUL ERROR

If an appellant assigns no error to an independent ground that fully supports the complained-of judgment, we must accept the validity of the unchallenged independent ground, and as a result, any errors in the grounds challenged on appeal are rendered harmless. *S.W. ex rel. A.W. v. Arlington Indep. Sch. Dist.*, 435 S.W.3d 414, 419 (Tex. App.—Fort Worth 2014, no pet.); *Oliphant Fin. LLC v. Angiano*, 295 S.W.3d 422, 423–24 (Tex. App.—Dallas 2009, no pet.); *Britton v. Tex. Dep't of Crim. Just.*, 95 S.W.3d 676, 682 (Tex. App.—Houston [1st Dist.] 2002, no pet.); *Harris v. Gen. Motors Corp.*, 924 S.W.2d 187, 188 (Tex. App.—San Antonio 1996, writ denied). Thus, "[w]hen independent jury findings fully support a judgment, an appellant must attack each independent jury finding to obtain a reversal." *LandAmerica Commonwealth Title Co. v. Wido*, No. 05-14-00036-CV, 2015 WL 6545685, at *9 (Tex. App.—Dallas Oct. 29, 2015, no pet.) (mem. op.) (citing *Britton*, 95 S.W.3d at 681); *see Hollis v. Hollis*, No. 06-22-00082-CV, 2024 WL 436929, at *7 (Tex. App.—Texarkana Feb. 6, 2024, pet. denied) (mem. op.) (holding any error in submitting certain jury questions and any

insufficiency of the evidence to support the jury's findings under those questions was rendered harmless by the appellant's failure to challenge other findings establishing an independent ground of recovery supporting the judgment).

Here, Appellants sought, in effect, a declaratory judgment that (1) the Declaration was the Subdivision's only valid dedicatory instrument, (2) the POA was not properly formed, (3) the 2015 Bylaws and the Rules and Regulations were void or ineffective, and (4) the POA did not have the authority to assess the fines, fees, and other charges it sought to collect from Appellants. Thus, Appellants' requests for declaratory relief, which also served as the basis for their defense to the POA's claims, amounted to a challenge to the validity of—and the POA's right to enforce—the POA's articles of incorporation, the 2015 Bylaws, and the Rules and Regulations.

The charge's Question No. 5 asked the jury to determine whether each Appellant was "entitled to challenge [the] POA's right to enforce" the POA's "dedicatory instruments," which the charge defined to mean:

> [E]ach governing instrument covering the establishment, maintenance, and operation of a residential subdivision and includes:
> (a) The declaration, the bylaws, or similar instruments governing the administration or operation of a property owners association;
> (b) Properly adopted [r]ules and regulations of a property owners association; [and]
> (c) All lawful amendments to the declaration, bylaws, and rules and regulations.[5]

---

[5]This definition generally tracks the one set forth in the Property Code. *See* Tex. Prop. Code Ann. § 202.001(1).

The charge then instructed the jurors regarding the POA's affirmative defenses—including waiver, ratification, unclean hands, limitations, estoppel, and laches—and directed them to consider these instructions in answering Question No. 5. Given these instructions, the jury found that none of the Appellants were entitled to challenge the POA's right to enforce the dedicatory instruments.

Because of the nature of the parties' claims and defenses, the jury's answer to Question No. 5 provided an independent basis for the trial court's judgment. Because Appellants' requests for declaratory relief were predicated on their challenge to the POA's right to enforce the Subdivision's dedicatory instruments—particularly the POA's articles of incorporation, the 2015 Bylaws, and the Rules and Regulations—the jury's finding that Appellants were not entitled to mount such a challenge effectively barred them from obtaining any judgment that declared in their favor. Thus, this finding alone provided an independent ground for the trial court's judgment declaring, inter alia, that the POA could enforce the dedicatory instruments and awarding the POA damages for the fines, fees, and other charges that it had assessed but that Appellants had failed to pay.

But on appeal, Appellants fail to challenge—in any meaningful way—the jury's finding in response to Question No. 5. Rather, in their briefing, Appellants merely assert—without citing any authority—that the jury's response to Question No. 5 is

9

"immaterial"[6] and "contrary to the facts"[7] because of the way that the question was phrased. According to Appellants, because the Subdivision's only legitimate dedicatory instrument is the Declaration and because Appellants did not challenge the Declaration's validity, the jury's finding that Appellants were not entitled to challenge the POA's right to enforce its dedicatory instruments had no bearing on the case's outcome. However, this argument ignores the charge's language and is thus fundamentally flawed.

Although Appellants maintained that the Declaration was the Subdivision's only valid dedicatory instrument, the charge did not adhere to this narrow definition.

---

[6]Though Appellants describe the jury's finding in response to Question No. 5 as "immaterial," they do not contend that the question called for a finding beyond the jury's province or that the finding was rendered immaterial by other findings. *See Se. Pipe Line Co. v. Tichacek*, 997 S.W.2d 166, 172 (Tex. 1999) ("A question is immaterial when it . . . calls for a finding beyond the province of the jury . . . or when it . . . has been rendered immaterial by other findings."). In any event, Appellants forfeited any complaint relating to this question's submission to the jury by failing to raise it in an objection to the charge. *See Lakota Energy Ltd. P'ship v. Merit Mgmt. Partners I, L.P.*, No. 02-13-00057-CV, 2016 WL 6803181, at *5 (Tex. App.—Fort Worth Nov. 17, 2016, pet. denied) (mem. op.); *see also* Tex. R. Civ. P. 274 ("Any complaint as to a question, definition, or instruction, on account of any defect, omission, or fault in pleading, is waived unless specifically included in the objections [to the charge]."). Further, because—as noted—the jury's finding in response to this question effectively barred Appellants from obtaining a judgment that declared in their favor, it was not rendered immaterial by any other findings.

[7]Appellants do not specifically contend that the evidence supporting the jury's finding in response to Question No. 5 was factually insufficient. But to the extent that their vague assertion that the finding was "contrary to the facts" could be construed as a factual-sufficiency challenge, we note that Appellants forfeited any such complaint by failing to file a motion for new trial. *See* Tex. R. Civ. P. 324(b)(2); *In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003).

10

Rather, the charge defined the term dedicatory instrument to include not only a declaration governing a subdivision but also "the bylaws, or similar instruments governing the administration or operation of a property owners association" and the "[p]roperly adopted [r]ules and regulations of a property owners association."[8] We must presume that the jury followed the trial court's instructions as set forth in the charge and applied this definition when answering Question No. 5. *See Maayeh v. Curry*, No. 05-19-01466-CV, 2022 WL 1089913, at *7 (Tex. App.—Dallas Apr. 12, 2022, no pet.) (citing *Credit Suisse, AG v. Claymore Holdings, LLC*, 610 S.W.3d 808, 827 (Tex. 2020)); *Tex. & N.O.R. Co. v. Coe*, 102 S.W.2d 465, 467 (Tex. App.—Fort Worth 1937, writ dism'd). And it is clear that the POA's articles of incorporation, the 2015 Bylaws, and the Rules and Regulations constitute dedicatory instruments under the charge's definition. Thus, the jury's finding in response to Question No. 5 must be understood to mean that Appellants were barred from challenging the POA's right to enforce these documents. Because all of Appellants' claims and defenses were predicated on their contentions that the POA had not been properly formed and that

---

[8]Appellants did not object to this definition in the trial court, nor do they complain about it on appeal. Though Appellants submitted proposed jury instructions and questions that requested the inclusion in the charge of a different definition of "dedicatory instrument" than the one ultimately given by the trial court, such a request does not constitute an objection to the trial court's definition and is not sufficient to preserve error. *See Schutz v. S. Union Gas Co.*, 617 S.W.2d 299, 302 (Tex. App.—Tyler 1981, no writ). And when the trial court asked Appellants' counsel at the charge conference whether he had any objections to the proposed charge, he did not object to its definition of dedicatory instrument.

it could not enforce the 2015 Bylaws and the Rules and Regulations, this finding—in and of itself—effectively foreclosed any possibility of the trial court's rendering a judgment declaring in their favor.

Because the jury's finding in response to Question No. 5 provided an independent ground for the trial court's judgment and because Appellants failed to meaningfully challenge this finding on appeal, they have failed to demonstrate harmful error. *See Hollis*, 2024 WL 436929, at *7; *see also S.W. ex rel. A.W.*, 435 S.W.3d at 419; *Oliphant Fin. LLC*, 295 S.W.3d at 423–24; *Britton*, 95 S.W.3d at 682; *Harris*, 924 S.W.2d at 188. Although we could end our analysis here, we will nevertheless address Appellants' primary arguments in the interests of completeness and clarity. *See In re County of Hidalgo*, 655 S.W.3d 44, 52 (Tex. App.—Corpus Christi–Edinburg 2022, orig. proceeding); *Carr v. Jaffe Aircraft Corp.*, 884 S.W.2d 797, 803 (Tex. App.—San Antonio 1994, no writ); *see also In re Estate of Tovar*, No. 08-22-00028-CV, 2023 WL 2373496, at *4 (Tex. App.—El Paso Mar. 6, 2023, pet. denied) (mem. op.) ("In the interest of completeness, we address the last portion of [appellant's] argument on this issue."); *cf. Perry v. Cohen*, 272 S.W.3d 585, 587 (Tex. 2008) ("[A]ppellate courts should reach the merits of an appeal whenever reasonably possible.").

## B. THE POA WAS PROPERLY FORMED

In their first issue, Appellants contend that the record contains legally insufficient evidence to support the jury's findings that it was the Developer's intent for the POA to be the Subdivision's property owners association and that the POA

12

"was formed either by designation in the . . . Declaration[] or by approval of the percentage of homeowners designated in the original restrictions." We disagree.

We may sustain a legal-sufficiency challenge—that is, a no-evidence challenge—only when (1) the record bears no evidence of a vital fact, (2) the rules of law or of evidence bar the court from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence establishes conclusively the opposite of a vital fact. *Gunn v. McCoy*, 554 S.W.3d 645, 658 (Tex. 2018). In determining whether legally sufficient evidence supports the challenged finding, we must consider evidence favorable to the finding if a reasonable factfinder could, and we must disregard contrary evidence unless a reasonable factfinder could not. *Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007); *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We indulge "every reasonable inference deducible from the evidence" in support of the challenged finding. *Gunn*, 554 S.W.3d at 658 (quoting *Bustamante v. Ponte*, 529 S.W.3d 447, 456 (Tex. 2017)).

First, Appellants argue that no evidence supports the jury's finding that the POA was properly formed because the record purportedly shows that the Developer sold certain lots in the Subdivision before the Declaration was filed, meaning that the Declaration was not "universal to all lots." *See Cannon v. Ferguson*, 190 S.W.2d 831, 835 (Tex. App.—Fort Worth 1945, no writ) (noting that to be effective and enforceable a neighborhood scheme of restrictions must be universal (quoting *Scull v. Eilenberg*, 94

13

N.J. Eq. 759, 762, 121 A. 788, 789 (E. & A. 1923))). To support this argument, Appellants rely on eight warranty deeds that reflect that they were executed before the Declaration was filed on October 18, 1982. But the mere execution of a deed does not effectuate a title transfer; rather, title to transferred property vests upon execution *and delivery* of the deed. *Stephens Cnty. Museum, Inc. v. Swenson*, 517 S.W.2d 257, 261 (Tex. 1974); *see* Tex. Prop. Code Ann. § 5.201. Because (1) the filing of a deed in the property records is prima facie evidence of delivery, *Swenson*, 517 S.W.2d at 261–62; (2) Appellants offered no independent evidence showing when the deeds were delivered; and (3) all of the deeds were filed after the filing of the Declaration,[9] the record supports a finding that the deeds were not delivered—and thus the lots were not transferred—until after the Declaration was filed. Thus, Appellants' first argument fails.

Second, Appellants argue that no evidence supports the jury's finding that the Developer intended for the POA to be the Subdivision's property owners association

---

[9]Appellants assert that two of the deeds were filed on October 10, 1982 (i.e., eight days before the filing of the Declaration). But the POA contends that although the deeds' stamped filing dates appear at first glance to be "October 10," closer inspection reveals that the stamp did not strike completely and that the deeds were actually filed on October 19. The POA's position is supported by the fact that the deputy clerk handwrote on both deeds that they were "filed for record on the 19 day of October, 1982, at 3:55 p.m." As factfinder, the jury was free to resolve any conflict regarding these deeds' filing dates in favor of the POA. *See Vigil v. Kirkland*, No. 02-16-00147-CV, 2017 WL 2471091, at *2 (Tex. App.—Fort Worth June 8, 2017, no pet.) (mem. op.) (citing *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986)). And on this record, the jury could have reasonably determined that they were filed on October 19, 1982 (i.e., after the filing of the Declaration).

14

because the Declaration does not specifically mention the POA by name. But the

record reflects that

- The Developer was incorporated by Joe McDuff, C.F. Sealey, and M.E. Roberts;

- The POA was incorporated by these same individuals;

- McDuff signed the Declaration on the Developer's behalf, and Sealey attested to his signature;

- The Declaration clearly contemplated that a property owners association would be formed for the Subdivision by stating, among other things, that every lot owner "shall become a member of the [S]ubdivision['s] property owners association at the time such . . . association is formed";

- The POA's articles of incorporation explicitly reference the Declaration; and

- The Developer conveyed the Subdivision's common areas to the POA.

Given this evidence, a reasonable and fair-minded person could conclude that, even

though the Declaration does not specifically name the POA,[10] the Developer intended

for the POA to be the Subdivision's property owners association. Thus, the record

---

[10]Appellants cite *Summers v. Highland Composite Prop. Owner's Ass'n, Inc.* to support their contention that the jury could not have reasonably found that the POA is the Subdivision's property owners association because the Declaration does not mention it by name. But *Summers* is distinguishable because the declaration at issue in that case did not reference—much less contemplate the formation of—a property owners association at all and instead merely noted that certain fees collected for road maintenance and the removal of litter would be "handled by a garden club or some such facility." 363 S.W.3d 210, 214 (Tex. App.—Corpus Christi–Edinburg 2011, no pet.). We reject Appellants' implicit contention that *Summers* stands for the proposition that a property owners association must be specifically named in, or directly formed by, a subdivision's deed restrictions to be valid.

15

contains more than a scintilla of evidence to support this finding, *see Rocor Int'l, Inc. v. Nat'l Union Fire Ins.*, 77 S.W.3d 253, 262 (Tex. 2002), and Appellants' no-evidence challenge fails, *see Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 450 (Tex. 1996); *see also 4Front Engineered Sols., Inc. v. Rosales*, 505 S.W.3d 905, 909 (Tex. 2016) ("The evidence is legally sufficient if . . . there is more than a scintilla of evidence on which a reasonable juror could find the fact to be true.").

We overrule Appellants' first issue.

## C. THE POA CAN COLLECT ASSESSMENTS, FINES, AND OTHER CHARGES

In their second and third issues, Appellants challenge the jury's findings that the 2015 Bylaws were properly adopted[11] and do not conflict with the Declaration and that the Subdivision's dedicatory instruments authorize the POA to collect assessments, fines, and other charges from lot owners. Appellants' challenge rests on two primary arguments. First, they argue that the 2015 Bylaws and the Rules and

---

[11]Appellants challenge the jury's finding that the 2015 Bylaws were properly adopted not only because they purportedly conflict with the Declaration but also because the POA purportedly failed to carry its burden to prove that they were approved at a properly called POA meeting with a quorum of members present. But the 2015 Bylaws recite that they were approved by the POA's members "at a properly called meeting of the [POA] at which a quorum was present or represented by mail[-]in ballot or by proxy," and John Hall, whose company served as the Subdivision's property manager, testified that he was present for the vote on the 2015 Bylaws and that there was a quorum present. Based on this evidence, the jury could have reasonably determined that the 2015 Bylaws were duly adopted according to the applicable procedural rules. *See Rocor Int'l, Inc.*, 77 S.W.3d at 262; *see also 4Front Engineered Sols., Inc.*, 505 S.W.3d at 909.

Regulations conflict with the Declaration and are therefore invalid.[12] Second, they argue that the POA's board minutes memorializing the amounts of the assessments, fines, and other charges imposed on lot owners are ineffective as a matter of law because they are dedicatory instruments that have not been filed in the county deed records.[13] Both of these arguments are meritless.

Appellants contend that the 2015 Bylaws and the Rules and Regulations conflict with the Declaration because the Declaration is silent regarding the specific amounts and types of charges and fees that lot owners must pay to the POA. But this contention runs contrary to Texas caselaw and common sense. Texas courts have recognized that other dedicatory instruments—including a property owners association's bylaws—can address matters not specifically covered in a subdivision's declaration without creating a conflict. *See Myers v. Tahitian Vill. Prop. Owners Ass'n, Inc.*, No. 03-21-00105-CV, 2022 WL 91660, at *3 (Tex. App.—Austin Jan. 6, 2022, pet. denied) (mem. op.) (holding that trial court could have reasonably concluded that

---

[12]Appellants couch this argument in terms of whether the POA's bylaws can amend the Declaration. But the POA has never asserted—nor did the jury find—that the Declaration can be amended by its bylaws. Thus, rather than addressing what amounts to a straw-man argument, we will focus on Appellants' core contention that the 2015 Bylaws are invalid because they conflict with the Declaration.

[13]We note that this second argument is inconsistent with Appellants' contention (discussed above) that the jury's finding that Appellants were not entitled to challenge the POA's dedicatory instruments was immaterial because the Declaration—which Appellants did not challenge—is the only such dedicatory instrument.

property owners association had authority to make assessments—including transfer fees or fines for rules violations—based on authority contained in bylaws even though the subdivision's restrictive covenants were silent on the issue and a provision requiring owners to pay an annual assessment had been removed); *Goddard v. Northhampton Homeowners Ass'n, Inc.*, 229 S.W.3d 353, 357–58 (Tex. App.—Amarillo 2007, no pet.) (concluding that a homeowners association's bylaws created a mechanism by which it could increase the amount of assessments after a certain date even though the declaration was silent on the issue). Thus, the mere fact that the 2015 Bylaws and the Rules and Regulations address particular issues—including the establishment of specific fines, fees, and other charges for lot owners—on which the Declaration is silent does not, in and of itself, create a conflict. *See Myers*, 2022 WL 91660, at \*3; *Goddard*, 229 S.W.3d at 357–58; *cf. Whitehead v. Reiger*, 282 S.W. 651, 656 (Tex. App.—Amarillo 1926) ("The written contract is silent upon that question; hence there is no conflict . . . ."), *aff'd*, 6 S.W.2d 745 (Tex. Comm'n App. 1928, judgm't adopted). The Declaration expressly creates "charges" and "liens" upon the Subdivision's lots and requires lot owners to pay "dues and maintenance fees" to the property owners association. Therefore, the complained-of provisions in the 2015 Bylaws and the Rules and Regulations establishing particular "charges" and "fees" for lot owners do not conflict with the Declaration; rather, they merely flesh out its terms. *Cf.* Tex. Prop. Code Ann. § 202.003(a) ("A restrictive covenant shall be liberally construed to give effect to its purposes and intent.").

18

Appellants' argument that the POA's board minutes memorializing the amounts of the assessments, fines, and other charges imposed on lot owners are dedicatory instruments—and are therefore ineffective as a matter of law because they have not been filed in the county deed records—is equally unpersuasive. They cite no authority supporting this contention. The POA's board minutes merely recite the discussions and decisions made at board meetings and cannot themselves be considered "document[s] governing the establishment, maintenance, or operation" of the Subdivision. *See id.* § 202.001(1). Thus, they are not dedicatory instruments. *See id.*

Because the 2015 Bylaws and the Rules and Regulations do not conflict with the Declaration and because the POA's board minutes are not dedicatory instruments that must be filed in the deed records to be effective, Appellants' arguments that the 2015 Bylaws were not properly adopted and that the POA lacked authority to collect assessments, fines, and other charges from lot owners fail. Thus, their legal-sufficiency challenge to the contrary jury findings likewise fails.

We overrule Appellants' second and third issues.[14]

---

[14]Within the framework of their second and third issues, Appellants raise several other miscellaneous arguments—all of which are meritless or unpreserved—beyond those discussed above. Because the purported errors addressed by these arguments were rendered harmless by Appellants' failure to challenge all independent grounds for the trial court's judgment, *see supra* Section II.A., we need not address all of them herein, *see* Tex. R. App. P. 47.1. However, two of these arguments merit a brief discussion.

### III. CONCLUSION

Having determined that Appellants failed to challenge all independent grounds for the judgment below and having overruled all of their appellate issues, we affirm the trial court's judgment.

/s/ Brian Walker

Brian Walker
Justice

Delivered:  February 6, 2025

---

First, Appellants contend that the trial court's judgment does not conform to the POA's pleadings.  *See* Tex. R. Civ. P. 301.  However, pleadings under the Declaratory Judgments Act are liberally construed, *Canales v. Zapatero*, 773 S.W.2d 659, 661 (Tex. App.—San Antonio 1989, writ denied), and a trial court is not constrained to sign a judgment only in a form specified by one of the parties because it also has a duty to ensure that the judgment reflects a correct application of the law to determine the effect of the jury's verdict, *Salomon v. Lesay*, 369 S.W.3d 540, 553–54 (Tex. App.—Houston [1st Dist.] 2012, no pet.).  Here, although the judgment's declarations do not track the POA's petition verbatim, the judgment generally conforms to the allegations made by the POA in its petition and at trial, and it correctly applies the law to the jury's verdict.  Thus, it is not defective under Rule 301.  *See Salomon*, 369 S.W.3d at 553–54.

Second, Appellants argue—without citing any authority—that because the declaratory relief granted in the trial court's judgment affects all of the Subdivision's lot owners, they are all necessary parties to the lawsuit.  However, Appellants forfeited any complaint about the POA's purported failure to join necessary parties by failing to raise the issue in a verified pleading in the trial court, *see* Tex. R. Civ. P. 93(4); *Allan v. Nationstar Mortg., LLC*, No. 14-18-00246-CV, 2019 WL 2939746, at *3 (Tex. App.—Houston [14th Dist.] July 9, 2019, pet. denied) (mem. op.), and by failing to adequately brief it on appeal, *see* Tex. R. App. P. 38.1(i); *Huey v. Huey*, 200 S.W.3d 851, 854 (Tex. App.—Dallas 2006, no pet.) ("Failure to cite applicable authority or provide substantive analysis waives an issue on appeal.").